IN THE UNITED STATES DISTRICT COURT OF THE
WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: _____

| | |
|---|---|
| **JASON ROBERT MAGERS** and **RANDY HERMANN**, individually and on behalf of all other persons similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| **BANK OF AMERICA, N.A.,** | ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs, Jason Robert Magers and Randy Hermann, individually and on behalf of all other persons similarly situated, by and through counsel, bring this action against Defendant Bank of America, N.A. ("Bank of America"), and allege as follows:

## PARTIES

1. Plaintiff Jason Robert Magers, who is an ongoing customer of Bank of America, is a citizen of West Virginia, residing at 21 Linden Ave, Moundsville, WV 26041-1125.

2. Plaintiff Randy Hermann, who is an ongoing customer of Bank of America, is a citizen of Wisconsin, residing at 12028 26th Ave, Pleasant Prairie, WI 53158.

3. Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers pursuant to Rule 23 of the Federal Rules of Civil Procedure.

4. At all relevant times, Defendant Bank of America was headquartered in North Carolina, at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255, with branches and ATMs located in 38 states and the District of Columbia. Bank of America is incorporated in Delaware.

1

## NATURE OF THE ACTION

5. This case arises out of Bank of America's deceitful business practices which, on information and belief, harmed thousands of consumers over a period of many years, beginning in 2012, and across multiple product lines and services.

6. Bank of America is a global bank serving 68 million people and small business clients and is the second largest bank providing consumer financial services in the country.

7. During the pertinent time period, Bank of America deployed sales-based incentive goals and evaluation criteria for its employees, resulting in some employees illegally applying for and enrolling consumers in credit card accounts without consumers' knowledge or authorization.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one putative class member is of diverse citizenship from one defendant, there are 100 or more class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

9. This Court has general personal jurisdiction to hear any and all claims against Defendant pursuant to *Int'l Shoe Co. v. Wash.,* 326 U.S. 310 (1945) and *Daimler AG v. Bauman*, 571 U.S. 117 (2014) as Defendant has regular, systematic, and continuous contacts with North Carolina, such contacts are related to this lawsuit, and Defendant's contacts with the state are so pervasive as to render it essentially at home in North Carolina. Defendant's headquarters and principal place of business are in North Carolina.

10. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of the state in which this District is located.

11. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District.

**FACTS APPLICABLE TO NAMED PLAINTIFFS**

**James Robert Magers**

12. At all times relevant to this action, Plaintiff Mr. Magers maintained at least one account with Bank of America.

13. Plaintiff's account was opened pursuant to his execution of a contractual agreement with Bank of America, which, on information and belief, was substantially the same in substance as the agreements Bank of America executed with other consumers and class members.

14. In June 2022, Mr. Magers received a letter in the mail from Bank of America dated June 2, 2022.

15. The letter was addressed to Mr. Magers and stated that "we're working on your application for the Alaska Visa Signature card and need to verify the information on your application."

16. Mr. Magers did not apply for or authorize the issuance of any such credit card.

17. The credit card was applied for without Mr. Magers' consent or knowledge.

18. On information and belief, as part of the application process, Defendant obtained a copy of Plaintiff's credit report from one or more credit reporting agencies without Plaintiff's knowledge or consent.

19. On information and belief, Bank of America's employees, agents, or representatives applied for and approved the unauthorized credit card to meet sales goals.

20. On information and belief, Plaintiff's credit score and ability to receive credit were negatively impacted by the unauthorized credit card practices of Defendant, and Plaintiff otherwise suffered substantial concrete damages through impacts to his consumer credit profile, loss of control over personally sensitive and/or identifiable information, expenditure of consumer time and effort investigating the facts and seeking redress, and the need to monitor and mitigate harm going forward.

**Randy Hermann**

21. At all times relevant to this action, Plaintiff Randy Hermann maintained at least one account with Bank of America.

22. Mr. Hermann's account was opened pursuant to his execution of a contractual agreement with Bank of America, which, on information and belief, was substantially the same in substance as the agreements Bank of America executed with other consumers and class members.

23. In approximately February 2020, Mr. Hermann received a letter in the mail from Bank of America.

24. The letter stated that Mr. Hermann had been approved for a Bank of America credit card.

25. Mr. Hermann did not apply for or authorize the issuance of any such credit card.

26. The credit card was opened without Mr. Hermann's consent or knowledge.

27. On information and belief, Bank of America's employees, agents, or representatives applied for and approved the unauthorized credit card to meet sales goals.

28. Mr. Hermann's credit score and ability to receive credit were negatively impacted by the unauthorized credit card.

29. Mr. Hermann reported the unauthorized credit card to the credit bureau.

30. Eventually, Mr. Hermann hoped to purchase a house and finance the purchase with a loan.

31. Mr. Hermann was unable to receive a home mortgage loan while his Bank of America accounts were open. He had to stop doing business with Bank of America entirely for his credit to improve enough to permit him to get a loan.

32. As a result of the unauthorized credit card, Mr. Hermann has suffered damages.

33. Because of the unauthorized credit card's effect on his credit score, Mr. Hermann has suffered damages in the form of higher interest rates and an inability to receive credit.

34. In addition, Mr. Hermann has suffered the loss of his time and energy, which he has had to expend reporting Bank of America's conduct to the credit bureau, closing his accounts, and/or otherwise attempting to remedy the harm caused by Bank of America.

## FACTS APPLICABLE TO THE CLASS

35. On July 11, 2023, the Consumer Financial Protection Bureau ("CFPB") ordered Bank of America to pay more than $100 million to customers, in part for misappropriating sensitive personal information to open accounts without customer knowledge or authorization.[1]

36. Under the Consumer Financial Protection Act of 2010 ("CFPA"),[2] the CFPB has the authority to take action against institutions violating consumer financial protection laws.

37. According to the CFPB, Bank of America's practices *inter alia* violated the CFPA by engaging in unfair and deceptive or otherwise prohibited acts or practices, the Fair Credit Reporting Act[3] by using or obtaining consumer reports without a permissible purpose in

---

[1] https://www.consumerfinance.gov/about-us/newsroom/bank-of-america-for-illegally-charging-junk-fees-withholding-credit-card-rewards-opening-fake-accounts/ (last visited July 17, 2023).
[2] *See* 12 U.S.C. §§ 5481, 5536.
[3] The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

5

connection with unauthorized credit cards, and the Truth in Lending Act[4] implementing Regulation Z,[5] by issuing credit cards to consumers without their knowledge or consent.

38. The CFPB's orders filed in the CFPB proceedings[6] require Bank of America to:

   A. Cease opening unauthorized accounts;

   B. Disclose material limitations on any rewards cards bonuses and provide bonuses as advertised;

   C. Cease charging repeat non-sufficient funds fees in the future;

   D. Compensate consumers charged unlawful non-sufficient funds fees and who have not already been made whole by the bank, totaling approximately $80.4 million in consumer redress;

   E. Compensate any consumer who incurred costs stemming from the unauthorized opening of new credit card accounts;

   F. Compensate any customers improperly denied bonuses whom the bank has not already made whole;

   G. Pay a $60 million penalty to the CFPB for charging repeat non-sufficient funds fees; and

   H. Pay a $30 million penalty to the CFPB for its credit card rewards practices and for opening unauthorized accounts.

39. Beginning in 2012, Bank of America implemented sales-based incentives for its employees.

40. One factor Bank of America included in evaluating its employees was the number of new consumer financial products or services that were opened and used by any given consumer originated by that employee.

---

[4] The Truth in Lending Act ("TILA"), 15 U.S.C. 1601 *et seq.*
[5] 12 C.F.R. Part 1026.
[6] *See In the Matter of: Bank of America, N.A.*, No. 2023-CFPB-0006 (CFPB), Consent Order filed July 11, 2023;
*In the Matter of: Bank of America, N.A.*, No. 2023-CFPB-0007 (CFPB), Consent Order filed July 11, 2023.

41. In response to sales pressure from Bank of America and/or to receive incentives, some Bank of America employees submitted applications and issued credit cards without consumers' consent.

42. One of Bank of America's practices was to obtain consumer reports, containing consumers' sensitive personal information, in the course of considering consumers for new credit cards.

43. Bank of America misused or improperly obtained consumer reports to consider consumers for new credit cards even when the consumers had not applied for or did not want the products and where Bank of America did not otherwise have a permissible purpose for the consumer reports.

44. During what the CFPB termed the "Account-Opening Findings Period,"[7] Bank of America sometimes generated associated fees from credit card accounts opened without consumers' consent.

45. On July 11, 2023, the CFPB filed a Consent Order and Stipulation, in the proceeding under File No. 2023-CFPB-0007, requiring Bank of America to, among other things:

    A. Provide redress to defined "Account-Opening Affected Consumers;"

    B. request deletion of all tradelines associated with the accounts that resulted in individuals being classified as Account-Opening Affected Consumers; and

    C. under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), pay a civil money penalty of $30,000,000 to the Bureau.[8]

---

[7] *In the Matter of: Bank of America, N.A.,* No. 2023-CFPB-0007 (CFPB), Consent Order filed July 11, 2023, at ¶¶ 3(b), 26.

[8] *Id.* Consent Order filed July 11, 2023, at ¶¶ 3(a), 55(b), 55(c), 59.

## RULE 23(b)(3) CLASS ACTION ALLEGATIONS

46. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals.

47. **Class Definition:** The Class that Plaintiffs seek to represent is defined as follows:

> All citizens of the United States who had an application submitted for or who were issued a credit card by Bank of America without their knowledge, authorization, or consent within the last four years.[9]

48. This action has been brought and may properly be maintained as a class action under federal law and satisfies the numerosity, commonality, typicality, and adequacy requirements of maintaining a class action under Fed. R. Civ. P. 23(a).

49. The proposed class is easily ascertainable. The number and identity of the class members are determinable from Defendant's records.

50. *Numerosity*: the proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Fed. R. Civ. P. 23(a)(1).

51. *Commonality*: there is a well-defined commonality of interest in the questions of law and fact involving and affecting the class in that Plaintiffs and all members of the proposed class have been harmed by Defendant. Fed. R. Civ. P. 23(a)(2). Specifically, all members of the class were customers of Bank of America, and all members of the class were harmed when Bank of America applied for and opened illegal and unauthorized credit cards in their names. The common questions of law and fact include, but are not limited to, the following:

    A.    Whether Defendant applied for and pulled credit reports during the process to apply for and/or opened credit card accounts for Plaintiffs and for other class members without proper authorization to do so;

---

[9] *See* N.C.G.S. § 75-16.2.

B. Whether Defendant breached its contracts with Plaintiffs and class members;

C. Whether Defendant obtained and utilized consumer credit reports of Plaintiffs and class members in violation of the FCRA;

D. Whether Defendant issued credit cards for Plaintiffs and other class members in violation of the TILA;

E. Whether Defendant violated the Electronic Funds Transfers Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, by issuing unauthorized credit cards to Plaintiffs and class members;

F. Whether Defendant was unjustly enriched by the unauthorized accounts it opened on behalf of Plaintiffs and class members;

G. Whether Defendant engaged in unfair and deceptive trade practices within the meaning of North Carolina law and/or other states' law by applying for, pulling credit reports for, or opening accounts for, unauthorized credit cards, on behalf of Plaintiffs and class members;

H. Whether Plaintiffs and class members are entitled to a declaratory judgment that Bank of America's practices were unlawful; and

I. Whether Plaintiffs and class members are entitled to damages.

52. *Typicality*: the claims of Plaintiffs herein are typical of the claims of the members of the classes. Plaintiffs and all members of the class sustained damages arising out of Defendant's conduct. These claims could be alleged by any member of the class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. Specifically, like Plaintiffs, each class member of the class had an illegal and unauthorized credit card opened in their name by Bank of America. Fed. R. Civ. P. 23(a)(3).

53. *Adequacy of Representation*: Plaintiffs are able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and members of the proposed class. Plaintiffs have retained counsel who are experienced and competent in complex class action litigation. Fed. R. Civ. P. 23(a)(4).

54. *Predominance and Superiority*: the common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

55. Moreover, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed classes would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

56. Pursuit of this action as a class action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

## TOLLING OF STATUTES OF LIMITATIONS

57. Under the circumstances herein, the applicability of any statute of limitations should be deemed to be subject to principles of equitable estoppel, tolling and concealment. Defendant's conduct in opening unagreed-to and fallacious accounts was hidden and concealed from Plaintiffs and class members, and Plaintiffs and class members were unable to independently discover the nature of the wrongdoing until recently.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

58. Plaintiffs reallege and incorporate by reference all of the preceding allegations 1 through 57 as if restated herein.

59. Plaintiffs and class members agreed to provide certain personally identifying information to Defendant in exchange for Defendant's agreement to provide banking services.

60. Plaintiffs and class members provided their information with the understanding that it would be used to facilitate the provision of banking services if and only if they explicitly authorized the services.

61. Plaintiffs and class members entered into valid contracts with Defendant whereby they provided their personal information to Defendant, where part of the bargained-for exchange was each Plaintiff's and class members' agreement to provide Defendant with their personal information and Defendant's agreement not to misuse or abuse that information.

62. On information and belief, this contract was drafted by Defendant and was offered on a take it or leave it basis and should be construed against the drafter to the extent that it may contain any ambiguities.

11

63. On information and belief, Defendant used Plaintiffs' and class members' personal information to request, authorize, and/or open credit card accounts.

64. These credit card accounts were created without authorization from Plaintiffs or class members.

65. By failing to safeguard Plaintiffs' and class members' information, and by using such information for the purpose of opening unauthorized credit cards on behalf of Plaintiffs and class members, on information and belief, Defendant breached its contract with Plaintiffs and class members.

66. Plaintiffs and class members were injured and have sustained damages as a result of Bank of America's breach of their contracts.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF THE FCRA

67. Plaintiffs reallege and incorporate by reference all of the preceding allegations 1 through 66 as if restated herein.

68. Each time that Bank of America opens a new account or starts a new financial service, it obtains, reviews, and uses a "consumer report," as that term is defined in 15 U.S.C § 1681a(d), about the consumer for whom the account is opened or the service started.

69. Bank of America is required by 15 U.S.C. §§ 1681b, 1681n, and 1681o to refrain from obtaining or using consumer reports from consumer reporting agencies ("CRAs") under false pretenses, and without proper authorization from the consumer who is the subject of the report.

70. Obtaining and using consumer reports in the process of opening unauthorized accounts or services is not allowed pursuant to the FCRA, and thus is a violation of federal law.

71. Bank of America has a mandatory duty to use or obtain consumer reports only for permissible purposes, pursuant to 15 U.S.C. § 1681b(f).

72. Despite these clear and unambiguous requirements of the FCRA, during the pertinent times, Defendants regularly pulled consumer reports regarding consumers without their knowledge or consent in order to open new unauthorized accounts and services as part of its cross-selling practices, in violation of the FCRA.

73. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Bank of America is liable for negligently and willfully violating the FCRA by accessing the consumer reports without a permissible purpose or authorization under the FCRA.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF THE EFTA

74. Plaintiffs reallege and incorporate by reference all of the preceding allegations 1 through 73 as if restated herein.

75. Congress created the EFTA in order to establish a framework to regulate electronic fund and remittance transfer systems, and to establish individual consumer rights related to electronic fund transfers.

76. Pursuant to the EFTA, "[n]o person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than—(1) in response to a request or application therefor; or (2) as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor." 15 U.S.C.A. § 1693i(a).

77. Bank of America has violated, and on information and belief, continues to violate this prohibition every time it falsifies consumer applications, and/or opens new unauthorized

accounts, issues debit and/or credit cards, and/or facilitates other means of access to the unauthorized accounts allowing for electronic funds transfers.

78. Plaintiffs and class members have received debit and/or credit cards from Bank of America when Plaintiffs and class members have not requested or applied for such cards, and/or have had falsified applications generated by Bank of America, with credit reports obtained, for purposes of seeking to potentially obtain such debit and/or credit cards.

79. Pursuant to 15 U.S.C. § 1693m, Bank of America is liable for actual damages, an amount to be determined by the Court related to the frequency, persistence, and other factors of Defendants' violations, plus attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

80. Plaintiffs reallege and incorporate by reference all of the preceding allegations 1 through 79 in as if restated herein.

81. As a result of Defendant's unlawful, unfair and deceptive actions described above, Defendant was unjustly enriched at the expense of Plaintiffs and the class through the payment of fees, penalties, and other charges resulting from accounts, products, and services that Bank of America unlawfully and/or deceptively opened for customers.

82. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the class, in light of the fact that Bank of America used illegal, deceptive, and/or unfair practices to induce or force customers to open, purchase, and/or maintain the banking services, accounts, and products. Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to

14

Plaintiffs and the class for the monies paid to Defendant as a result of the unfair, deceptive, and/or illegal practices.

## FIFTH CAUSE OF ACTION

### VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

83. Plaintiffs reallege and incorporate by reference all of the preceding allegations 1 through 82 as if restated herein.

84. Defendant is a corporation that maintains its principal place of business in North Carolina and that directs and controls its nationwide corporate activities from North Carolina.

85. On information and belief, Defendant's sales incentive policies were directed from Defendant's principal place of business in North Carolina.

86. On information and belief, Defendant stores its customer data, which it used to open unauthorized credit cards, in North Carolina.

87. As a result of the foregoing, Defendant's activities are subject to the laws and regulations of the State of North Carolina, including but not limited to the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"), N.C.G.S. § 75- 1.1, *et seq*.

88. The NC UDTPA "declares unlawful" all "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 75-1.1(a).

89. For purposes of the NC UDTPA, the term "commerce" includes "all business activities, however denominated." N.C.G.S § 75-1.1(b).

90. Defendant violated the NC UDTPA by engaging in unlawful, unfair, or deceptive business acts and practices in or affecting commerce.

15

91. As set out plainly above, Defendant engaged in unfair and deceptive acts and practices including but not limited to:

    A. Utilizing Plaintiffs' and class members' personal information to open credit card accounts that Plaintiffs and class members had not requested or authorized;

    B. On information and belief, representing on internal documentation that Plaintiffs and class members had applied for credit card accounts when, in fact, they had not;

    C. On information and belief, falsifying credit card application documentation to reflect that Plaintiffs and class members had applied for credit cards when, in fact, they had not;

    D. Acquiring credit reports regarding Plaintiffs and class members for the purpose of opening unauthorized accounts;

    E. Failing to disclose or fraudulently concealing that Defendant's regular practices included setting sales goals that incentivized its agents to open unauthorized accounts;

    F. Failing to disclose or fraudulently concealing that unauthorized accounts were going to be opened until Defendant had already opened the accounts; and

    G. Such other deceptive and unfair practices as may be proven at trial.

92. Defendant's unfair or deceptive acts and practices as enumerated above occurred in the course of its dealings with consumers, including Plaintiffs and class members, meaning the acts occurred in and affecting commerce.

93. Defendant's actions and practices were negligent, knowing, willful, wanton, and reckless with respect to the rights of Plaintiffs and class members.

94. As a direct and proximate result of Defendant's unfair or deceptive acts and practices, Plaintiffs and class members have incurred actual damages, including lower credit scores, higher interest rates, the inability to procure loans and credit, the time and expense

16

associated with closing the unauthorized accounts, and the loss of time and expense associated with remedying the effects of the unauthorized accounts on their credit scores.

95. Plaintiffs and class members are entitled to recover their actual damages as well as treble damages for Defendant's violation of the NC UDTPA.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE TILA

96. Plaintiffs reallege and incorporate by reference all preceding allegations 1 through 95 as if restated herein.

97. Under the TILA, "no credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642.

98. Regulation Z requires that no credit card shall be issued to any person except in response to an oral or written request or application for the card; or as a renewal of, or substitute for, an accepted credit card. 12 C.F.R. § 1026.12(a).

99. By issuing credit cards to consumers without the consumers' consent and not in response to an oral or written request or application for the card or as a renewal of, or substitute for, an accepted credit card, Defendant violated the TILA and Regulation Z, 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a).

100. The TILA creates a private cause of action for actual damages, 15 U.S.C. § 1640(a)(1), and also for statutory damages, 15 U.S.C. § 1640(a)(2).

101. As a result of Defendant's violations of the TILA, Plaintiffs and class members are entitled to actual and/or statutory damages.

## SEVENTH CAUSE OF ACTION

## DECLARATORY RELIEF

102. Plaintiffs reallege and incorporate by reference all preceding allegations 1 through 101 as if restated herein.

103. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

104. As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiffs and the Class.

105. Plaintiffs and the Class therefore seek an order declaring Bank of America's practice of opening unauthorized accounts unlawful, and that Bank of America is liable to Plaintiffs and the Class for damages caused by that practice.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all those similarly situated request that this Honorable Court:

1. Issue an Order certifying a class of consumers pursuant to Rule 23 and designate Plaintiffs as representatives on behalf of all consumers who banked with Defendant and on whose behalf Defendant opened unauthorized credit cards;

2. Issue an Order appointing the undersigned counsel as class counsel pursuant to Rule 23(g);

3. Award Plaintiffs, and all those similarly situated, attorneys' fees, costs and disbursements as allowed pursuant any applicable law;

4. Award Plaintiffs and all those similarly situated damages in excess of $5 million; and

18

5. Award Plaintiffs and all those similarly situated, further legal and equitable relief that this Court deems appropriate.

Dated: July 25, 2023.

COUNSEL FOR PLAINTIFF:

*s/ _Joel R. Rhine*_____
Joel R. Rhine
NCSB 16028
Martin Ramey
NCSB 33617
Rhine Law Firm, P.C.
North Carolina State Bar No. 16028
1612 Military Cutoff, Suite 300
Wilmington, NC 28403
910-772-9960
Fax: 910-772-9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

Mona Lisa Wallace
NCSB 9021
John S. Hughes
NCSB 22126
Wallace and Graham, P.A.
525 North Main Street
Salisbury, NC 28144
704-633-5244
Fax: 704-633-9434
mwallace@wallacegraham.com
jhughes@wallacegraham.com

Jeffrey S. Goldenberg*
Todd B. Naylor*
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

19

tnaylor@gs-legal.com

D. Aaron Rihn, Esquire*
Robert Peirce & Associates, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Phone: 412-281-7229
Fax: 412-281-4229
arihn@peircelaw.com

Charles E. Schaffer, Esquire*
Daniel C. Levin, Esquire*
Nicholas J. Elia, Esquire*
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215)592-1500
Fax: (215)592-4663
cschaffer@lfsblaw.com
dlevin@lfsblaw.com
nelia@lfsblaw.com

Joseph M. Lyon*
THE LYON FIRM
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Pro Hac Vice admission forthcoming